FILED

2015 Apr-16  AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS DENNEY, | ) | |
|     PLAINTIFF, | ) | |
| VS. | ) | 2:14-cv-1519-JHH |
| AETNA LIFE INSURANCE CO., | ) | |
|     DEFENDANT. | ) | |

## MEMORANDUM OF DECISION

The court has before it Cross-Motions for Judgment on the Administrative Record (Docs. # 10 & 12).   Pursuant to the court's December 3, 2014 order (Doc. #9), the motions were deemed submitted, without oral argument, on March 31, 2015. After thorough review of the briefs and administrative record, the court concludes that summary judgment is due to be granted in favor of Defendant Aetna Life Insurance Company for the reasons explained below.

## I. Procedural History

Plaintiff Thomas Denney commenced this action on August 4, 2014 by filing a Complaint (Doc. #1) in this court against Defendant Aetna Life Insurance Company.  Plaintiff's Complaint set forth only one cause of action: wrongful denial

of long term disability benefits in violation of the Employee Retirement Income Security Act of 1974, as amended, (ERISA), 29 U.S.C. §§ 1001, et seq. Defendant responded with an Answer (Doc. #4) on August 28, 2014. Pursuant to the court's initial order (Doc. #7), on December 2, 2014, the parties file a Joint ERISA report and the administrative record. (Doc. #8.) Defendant filed its Motion (Doc. #10) for Judgment on the Administrative Record on February 16, 2015, asserting that Aetna's determination that its determination that Plaintiff did not satisfy the Plan's Test of Disability after twenty-four months of long term disability (LTD) payments was correct, and not arbitrary and capricious. Plaintiff's February 17, 2015 Motion (Doc. #12), however, contends that Aetna's determination was both erroneous and unreasonable.

Both parties have filed briefs and jointly submitted the administrative record in support of their respective positions. Defendant submitted a brief (Doc. #11) and additional evidence[1] (Doc. #13) in support of its motion on February 16 and 19, 2015. On March 23, 2015, Plaintiff filed a brief (Doc. #152) in opposition to Defendant's Motion, and on March 31, 2015, Defendant filed a brief (Doc. #16) in reply. On February 17, 2015, Plaintiff submitted a brief (Doc. # 12) in support of his own

---

[1] Defendant submitted the following evidence in addition to the administrative record: affidavit of Ana Molina with attachments.

Motion for summary judgment.  On March 23, 2015, Defendant filed a brief (Doc. #

14) in opposition to Plaintiffs's Motion.  Although given the opportunity to do so,

Plaintiff did not file a brief in reply to Defendant's opposition.

## II. Findings of Fact

### A.  The Plan

LTD benefits under the Plan are funded by Group Policy Number GP-881927

("the Group Policy") issued by Aetna to Southwest.   (Admin. Rec. at 0000l -30.)

The Group Policy confers Aetna with "discretionary authority to: determine whether

and to what extent eligible employees and beneficiaries are entitled to benefits ; and

construe any disputed or doubtful terms under this policy."   (Admin. Red. at

000028.)

LTD benefits are payable under the Plan to eligible participants who are

"disabled" as defined by Plan booklet-certificate.  (Admin. Rec. at 000040.)  The

Plan's "Test of Disability is explained as follows:

> ***Own Occupation Period***
> From the date that you first become disabled; and until
> Monthly Benefits are payable for 24 months; you will be
> deemed to be disabled on any day if; solely because of:
> disease or **injury**; either of the following applies to you:
>
> •     you are not able to perform the **material duties** of
>        your **own occupation**;  or
> •     your   earnings   from   working   in   your   **own**

3

> **occupation** are 80% or less of: your **adjusted predisability earnings**.
>
> * * *
>
> ### Any Reasonable Occupation Period
> After the first 24 months that any Monthly Benefit is payable during a period of disability; you will be deemed to be disabled on any day if; solely because of: disease or **injury**; either of the following applies to you:
>
> - you are not able to work at any **reasonable occupation**; or
> - your earnings from working in any occupation are 50% or less of: your **adjusted predisability earnings** . . . .

(Id.) (emphasis in original).  "Reasonable occupation" is defined by the Plan booklet-certificate as "any gainful activity for which you are; or may become; fitted by: education; training; or experience."  (Admin. Rec. at 000058.)

## B.  Plaintiff's Injury, Resulting Disability and Worker's Compensation Claim

Plaintiff has a high school education and although he took some college courses, he never graduated.  (Admin. Rec. at 000096.)  Plaintiff was employed by Southwest as a ramp agent, which is considered a heavy duty-strength occupation.[2] (Admin. Rec. at 000518- 19.)  Plaintiff loaded and unloaded aircraft baggage and freight, directed and serviced aircraft, and operated various types of machinery.  (Id.)

---

[2] His other work experience includes working as a bartender.  (Admin. Rec. at 000181.) He has limited computer skills and limited typing skills.  (Admin. Rec. at 000095 and 0000309.)

4

According to Southwest, the occupation required Plaintiff to be able to lift and move items of 70 pounds or more on a "regular basis", repetitively lift weights of forty (40) to fifty (50) pounds on raised surfaces, and to climb, bend, kneel, crawl, and stoop "on a frequent basis and for extended periods." (Id.)

On June 1, 2010, Plaintiff reported a lower back and/or groin strain while loading checked luggage. (Admin. Rec. at 000612-13.) As a result of this on-the-job injury, Plaintiff was seen by Dr. Mike Mueller at St. Vincent's Occupational Health Clinic on June 4, 2010, who referred plaintiff for a lumbar spine MRl. (Admin. Rec. at 000497-99.)  The MRI was performed on June 8, 2010. (Admin. Rec. at 000496.)

A few weeks later, on June 29, 2010, Plaintiff was seen by Dr. Charles H. Clark, a neurosurgeon at Neurological Associates in Birmingham, Alabama. (Admin. Rec. at 000250.) Dr. Clark noted that Plaintiff had a work-related injury on June 4, 2010 and had "episodic pain in the past that resolved with conservative management." (Id.) Plaintiff complained of "left hip, groin and posterior lateral thigh discomfort which is gradually getting worse," and reported that weight-bearing and activity greatly exacerbated the pain. (Id.) Dr. Clark noted that a recent MRl, was suggestive of foraminal disc herniation at L5-Sl. (Id.) He diagnosed plaintiff with a "herniated lumbar disc L5-S1 left," and referred plaintiff for a lumbar myelogram. (Id.)

5

The myelogram was performed on July 14, 2010, and it showed "advanced degenerative disc changes at L5-Sl with disc space narrowing." (Admin. Rec. at 000248.) Due to the "severity and persistence" of Plaintiff s pain, Dr. Clark recommended lumbar fusion surgery and noted that Plaintiff would "remain off work in the interim." (Admin. Rec. at 000246.) Plaintiff underwent the surgery on August 26, 2010. (Admin. Rec. at 000509-10.) Dr. Clark recommended that Plaintiff remain out of work to recover from the surgery, and Plaintiff applied for and received worker's compensation benefits. (Admin. Rec. at 000241; Admin. Rec. at 000174.)

Approximately three weeks after surgery, on September 15, 2010, Plaintiff returned to Dr. Clark. Dr. Clark noted that Plaintiff's surgical wound was "healing nicely," but that he still had intermittent hip and thigh pain. (Admin. Rec. at 000241.) He recommended that Plaintiff stay out of work and return in five weeks. (Id.)

About five weeks later, on October 26, 2010, Plaintiff again was seen by Dr. Clark. Dr. Clark noted that x-rays indicated the fusion was "'progressing nicely," and that although Plaintiff's back pain was "resolved," he continued to have "left hip and leg discomfort." (Admin. Rec. at 000239.) Plaintiff was referred for physical therapy and was instructed to "stay off work." (Id.)

On December  13, 2010, three and one-half months post-surgery, Dr. Clark noted that plaintiff had "significant improvement with physical therapy" and could

6

"return to work 12/15/10 on light-duty." (Admin. Rec. at 000238.) Dr. Clark wanted Plaintiff to be re-assessed after two months. (Id.) Dr. Clark completed a Workman's Compensation Status Form stating that Plaintiff could "return to work with restrictions" of "no prolonged bending, stooping, or climbing." (Admin. Rec. at 000266.)

Two months later and five and one-half months post-surgery, on February 14, 2011, Plaintiff returned to Dr. Clark. (Admin. Rec. at 000237.) Plaintiff complained of inability to work due to "increasing back pain [that developed in] the past 3 weeks." (Id.) Dr. Clark noted that there was "no clear-cut radicular pain," and referred Plaintiff for another MRI. (Id.) He noted that if the MRI was negative, he would obtain a functional capacity evaluation (FCE). (Id.) In the meantime, Dr. Clark completed a Workman's Compensation Status Form stating that plaintiff was "not able to work." (Admin. Rec. at 000511.)

The MRI was performed on February 17, 2011. (Admin. Rec. at 000512.) Plaintiff saw Dr. Clark on February 28, 2011, and Dr. Clark noted that the scan showed no evidence of disc herniation, spinal stenosis or foraminal narrowing. (Admin. Rec. at 000515.) He commented that the fusion was "progressing nicely and pedicle screws [were] in excellent position ." (Id.) Dr. Clark "reassured [Plaintiff] and [made] recommendations regarding exercises and activities," and referred

Plaintiff for a FCE.  (Id.)  Dr. Clark noted that his likely recommendation would be a "[return to work] per the FCE."  (Id.)

The FCE was performed on March 8, 2011 at TherapySouth, which measured Plaintiff's "functional capacity for safe work activity."  (Admin. Rec. at 000193-94.) Plaintiff made "good effort" during testing and engaged in no "self-limiting behaviors."  (Id.)  Plaintiff's strength capacity fell into the "heavy work category for lifting, carrying, and push/pull," and  he demonstrated the ability to lift and carry (from floor to waist) 50-55 pounds occasionally and 25 pounds frequently, and push and pull up to 65 pounds.  (Id.)  He was able to stand and sit for 30 minutes each (with reported difficulty), and walk for 25 minutes.  (Id.)  Although Plaintiff demonstrated ability to perform a heavy duty occupation, "based on the job description provided by [his] employer," the FCE concluded that Plaintiff was "not able to perform all of his normal duties" because his occupation required "heavy lifting and carrying up to 70 pounds; heavy pushing up to 60 pounds; heavy pulling up to 87 pounds; Constant standing/walking; frequent crawling/ kneeling/ bending/ stooping/ twisting; climbing ladders/stairs/ramps frequently."  (Id.)

Dr. Clark saw Plaintiff about a week later, on March 16, 2011, to review the FCE results.  (Admin. Rec. at 000516.)  He released plaintiff to return to work March 21, 2011 "per FCE," stated that plaintiff would reach maximum medical improvement

one year from the date of his surgery, and assigned him a 10% impairment rating. (Id.) Dr. Clark completed a Workman's Compensation Status Form stating Plaintiff could "return to work with restrictions per FCE."[3]   (Admin. Rec. at 000265.) Additionally, Dr. Clark drafted a letter "to whom it may concern" dated March 17, 2011, where he stated that Plaintiff "is under my medical care and may return to work on 3/21/11 per FCE.  He can occasionally lift 50 lbs. There should be no prolonged bending, stooping or climbing. He may lift 25 lbs. frequently."   (Admin. Rec. at 000517.)

## C. Plaintiff's Long Term Disability Claim

### 1. "Own Occupation" Disability

Plaintiff made a claim for LTD benefits under the Plan in July 2011.  (Admin. Rec. at 000661-62.)   Based on the March 2011 FCE results and Dr. Clark's statements regarding Plaintiff's reduced functional capacity, Aetna determined that Plaintiff was not able to perform his own occupation and approved his claim for LTD benefits.[4]  (Admin. Rec. at 000170-07; Admin. Rec. at 000175.)   Aetna informed

---

[3] Plaintiff was paid worker's compensation benefits until August 25, 2011.  (Admin. Rec. at 000278.)

[4]  Aetna initially denied the LTD claim in a letter dated July 25, 2011, because it had not received some disability forms.  (Admin. Rec. at 000263.)  Plaintiff appealed the denial and submitted the required forms on July 27, 2011.  (Admin. Rec. at 000269.)

Plaintiff of the approval of his LTD claim in a letter dated September 9, 2011, with an effective date of September 3, 2010. (Admin. Rec. at 000228-30.) That letter further stated that Aetna would periodically re-evaluate Plaintiff's eligibility for benefits, and reminded him that the Plan limited benefits for disability from Plaintiff's "own occupation" to twenty-four (24) months. (Id.) After the 24 month "own occupation" period, the letter told Plaintiff that he was required to "meet a more strict 'any occupation' definition of disability" and show that he was "unable to perform any reasonable occupation for which [he was] qualified or could become qualified as a result of [his] education, training or experience." (Id.)

### 2. "Any Occupation" Disability

On March 6, 2012, Aetna wrote a letter to Plaintiff reminding him that the "own occupation" period would end on September 2, 2012, and informing him that it was conducting a review of his ability to perform other occupations. (Admin. Rec. at 000357- 58.) Aetna asked Plaintiff to provide any medical and vocational information he wished the company to consider in its review. (Id.) Additionally, a few weeks later, On March 29, 2012, Aetna asked Plaintiff to arrange for his treating physician to complete an enclosed capabilities and limitations worksheet, and to submit medical support for his ongoing disability claim. (Admin. Rec. at 000369-72.)

On April 4, 2013, in response to Aetna's letter, Plaintiff informed Aetna that

he had contacted Dr. Clark's office and St. Vincent's clinic and was told that "there is no new medical information since [his] last office visit to Dr. Clark's office on March 16, 2011," and that "they would not send in any new paperwork on [his] behalf since there is nothing new to report." (Admin. Rec. at 000495.) Plaintiff stated that his "medical condition and disability remains the same." (Id.) Plaintiff completed the capabilities and limitations worksheet himself, stating that "no new medical information or new physicians seen since last visit to Dr. Charles Clark on March 16, 2011. Medical condition still same. Also, no new medications taken." (Admin. Rec. at 000625-26.)

To determine Plaintiff's qualifications to perform other occupations, Aetna procured a transferable skills analysis (TSA) from Coventry Health Care. (Admin. Rec. at 000520-23.) In a report dated June 7, 2012, Deborah Lince, MS, CRC, discussed Plaintiff's occupational and educational history, and identified several appropriate jobs for plaintiff ranging from sedentary to medium duty. (Id.) Those jobs included the following: (1) Food Service Driver, Medium duty $14.65 per hour; (2) Airline Security Representative, Light duty $17.36 pe hour; (3) Truck Driver, Light/Medium duty $14.65 per hour; (4) Taxicab Starter, Sedentary duty $16.72 per hour; (5) Surveillance System Monitor, Sedentary duty $16.55 per hour; and/or (6) Assignment Clerk, Sedentary duty $20.93 per hour.

11

By letter dated June 13, 2012, Aetna informed Plaintiff that LTD benefits would be denied after September 2, 2012, based on a determination that Plaintiff was not disabled from "any reasonable occupation." (AR000492-94.) Aetna emphasized that its decision was based on the FCE and Dr. Clark's March 17, 2011 release of Plaintiff to return to work stating, inter alia, that Plaintiff was capable of lifting up to 50 pounds. (Id.) Aetna also noted that the TSA identified several appropriate alternative occupations based on plaintiff's physical limitations, education and work history. (Id.)

Plaintiff appealed the denial with the assistance of counsel, Tammy Smith at Taylor & Taylor in Birmingham. (Admin. Rec. at 000528-29 .) Taylor submitted additional information for Aetna's review, including Workman's Compensation Status Forms dated October 11, 2012 and November 28, 2012, signed by Dr. Clark and bearing check marks next to "patient not able to work." (Admin. Rec. at 000543; 547.) The forms contained no other information about Plaintiff's restrictions and limitations despite providing plenty of spaces for such information. (Id.) Smith also submitted office visit notes from Dr. Clark dated October 11, 2012, October 18, 2012, and October 23, 2012. (Admin. Rec. at 000544-46). In those records, Dr. Clark noted that Plaintiff had another myelogram and CT scan, in which Dr. Clark saw "no evidence of root encroachment." (Id.) Although Plaintiff reportedly continued to

12

complain of left hip and leg pain, Dr. Clark noted that the fusion at L5-S 1 was progressing satisfactorily and the pedicle screws were in excellent position. (Id .) Dr. Clark recommended lumbar epidural blocks, noted that Plaintiff was prescribed Neurontin, and indicated he would see plaintiff "in the future only if needed." (Id.)

Aetna sent Plaintiff's medical records for independent review by Ephraim K. Brenman, D.O., a physician board certified in physical medicine and rehabilitation, with a sub-specialty certificate in pain medicine. (Admin. Rec. at 000486-89.) Dr. Brenman determined that the records did not support a functional impairment precluding Plaintiff from the performing "any occupation" or a heavy physical demand level occupation . (Id.) Dr. Brenman emphasized that the FCE showed that Plaintiff could perform a heavy duty job, and in Dr. Brenman's opinion, Plaintiff could lift and carry up to 50 pounds on a frequent basis. (Id.) Plaintiff had no restrictions to sitting, standing, and walking, or going up and down stairs, reaching overhead or repetitive upper limb activities while sitting at a desk including keyboarding and fingering or reaching at a desk level. (Id.) Plaintiff was restricted to reaching below waist level to an occasional basis, but there was nothing else in the documentation to support preclusion from work. (Id.) Dr. Brenman commented that the CT myelogram was negative, the MRI scan showed no nerve root impingement, and there was no objective evidence of radiculopathy on examination. (Id.)

13

Dr. Brenman expressed disagreement with Dr. Clark's October 11, 2012 Workman's Compensation Status Form indicating "patient not able to work," because it was not supported by the medical evidence.  (Id.)  Dr. Brenman further observed that there was no documentation of adverse medication effect causing functional impairment, and opined that the occupations identified in the TSA were appropriate for Plaintiff.  (Id.)  Finally, Dr. Brenman attempted to conduct a peer-to-peer conference with Dr. Clark regarding Plaintiff's restrictions and limitations, but two phone calls from Dr. Brenman to Dr. Clark's office were not returned.  (Id.)

In a further attempt to reach Dr. Clark and to better understand Plaintiff's impairment level and functioning capacity, Aetna wrote to Dr. Clark on January 31, 2013, and referenced  Dr. Brenman's desire to discuss Plaintiff's restrictions and limitations, but that his calls were not returned.  (Admin. Rec. at 000395.)  Aetna enclosed a copy of Dr. Brenman's report, and asked Dr. Clark to identify any portions with which he disagreed.  (Id.)  Dr. Clark did not respond.  (Admin. Rec. at 000397.)

Based on the above, by letter dated February 13, 2013, Aetna informed Plaintiff that the LTD decision was upheld on appeal.  (Admin. Rec. 000396-98.)  Aetna emphasized that although Plaintiff continued to complain of hip and leg pain and Dr. Clark indicated on two forms that plaintiff was not able to work, there was a lack of medical evidence to support plaintiff's inability to work at any reasonable occupation

as of September 3, 2012.  (Id.)  Aetna stated that Dr. Brenman's review, the FCE, Dr. Clark's medical records and release of plaintiff to work in March 2011, the CT myelogram and MRI tests, and the TSA all supported that plaintiff was capable of performing a number of sedentary, light, and medium duty occupations.   (Id.) Plaintiff was informed of his right to bring suit under ERISA, and this action ensued. (Id.)

## III.  Standard of Review

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1132(a)(1)(B)). ERISA itself does not provide a standard for courts reviewing benefits decisions made by plan administrators or fiduciaries. Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989)), but the Eleventh Circuit has "established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions" in light of recent decisions of the Supreme Court  Id. The steps are as follows:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Wayton v. United Mine Workers of America Health and Retirement Funds, 2014 WL 2566092 *3 (11th Cir. 2014).  This court's review of Aetna's decision is limited to "consideration of the material available to the administrator at the time of the decision."  Blankenship, 644 F.3d at 1354 (citing Jett v. Blue Cross & Blue Shield, 890 F.2d 1137, 1140 (11th Cir. 1989)).

The claimant has the burden of proving entitlement to ERISA benefits.  Glazer v. Reliance Std. Life Ins. Co., 524 F.3d 1241, 1248 (11th Cir. 2008).  Plaintiff "bears

the burden of proving that [Aetna's] decision is wrong." Id. at 1247. If Plaintiff satisfies this burden, he "then must demonstrate that [Aetna's] decision to deny [his] LTD benefits was arbitrary and capricious; that is, he must show that no reasonable grounds support [Aetna's] decision."[5] Id.

## III. Analysis

As discussed in detail above, Aetna denied Plaintiff's LTD claim because it concluded that Plaintiff did not satisfy the Plan's Test of Disability after twenty-four months of LTD payments was correct and not arbitrary and capricious. First, the court must decide whether Aetna's decision was correct. If it was, the inquiry ends. If it was incorrect, the court must then go on to the next steps in the ERISA analysis and ultimately decide whether the decision was arbitrary and capricious.

## A. Aetna's Decision Denying Benefits Was Correct

Under the Plan, for the first twenty-four months that benefits are payable, a claimant is disabled if "solely because of injury or sickness . . . [he is] not able to

---

[5] Plaintiff argues that the de novo standard of review should apply to the decision, although Plaintiff stipulated in the Joint ERISA Report ( Doc. # 8) that "[t]he arbitrary and capricious standard applies because the Group Policy at issue confers Aetna with 'complete authority to review all denied claims for benefits under this policy. . . ." (Id. at 2.) This argument is erroneous. It is clear from the Plan documents before the court, including both the Group Policy and the Plan booklet-certificate, that the Plan granted Aetna discretionary authority in reviewing claims. Plaintiff's argument that he was not provided a copy of the Group Policy before this litigation is not persuasive. See Brucks v. Coca-Cola, 391 F. Supp. 2d 1193, 1202 (N.D. Ga. 2005.)

perform the material duties of [his] own occupation." (Admin. Rec. at 000040.)
After reviewing all the relevant medical information (see supra at Section IIB-C1),
Aetna accepted Plaintiff's reduced physical capacity rendered him unable to perform
his own occupation are a ramp agent and paid him the full 24 months of "own
occupation" LTD benefits.   This is undisputed.

After the passage of those 24 months, however, the Plan re-defines the
definition of disability: after the first twenty-four months a claimant is disabled if
solely because of injury or disease, he is "not able to work at any reasonable
occupation" or his "earnings from working in any occupation are 50% or less of [his]
adjusted predisability income earnings. . . ." (Admin. Rec. at 000040.)  This is where
Plaintiff and Defendant disagree.

To ascertain Plaintiff's qualifications to perform "any occupation," in March
2012, Aetna asked Plaintiff to provide any new medical and vocational information,
asked Plaintiff to arrange for his treating physician to complete a capabilities and
limitations worksheet, and to submit medical support for his ongoing disability claim.
(Id. at 000369-72.)  Plaintiff did not submit any new information to be considered and
stated that his medical condition and disability remains the same." (Id. at 000459.)
Plaintiff completed the capabilities and limitations worksheet himself, stating "no
new medical information or new physicians seen since last visit to Dr. Charles Clark

18

on March 16, 2011.  Medical condition still same.  Also no new medications taken."
(Id. at 000625-26.)  Aetna then obtained a TSA which identified seven "reasonable occupations" for Plaintiff ranging from sedentary to medium duty, for which he was, or could reasonably become, fitted by education, training or experience.   Based on the TSA, FCE, and Dr. Clark's assessment of Plaintiff's ability to work, Aetna denied Plaintiff's claim for LTD benefits beyond the 24 month "own occupation" period.

The record before the court fully supports that Aetna's decision was correct and that Plaintiff was capable of such work.  In particular, Plaintiff's treating physician, Dr. Clark, released Plaintiff to return to work on March 21, 2011 per FCE and assigned him a 10% impairment rating.  (Id. at 000516.)  Dr. Clark further stated that Plaintiff could occasionally lift 50 pounds and may frequently like 25 pounds, although there should be no prolonged bending, stooping or climbing.  (Id. at 000517.)  The FCE rated Plaintiff's strength in the "heavy work category for lifting, carrying, and push/pull." (Id. at 000193-94.)  Plaintiff demonstrated the ability to lift and carry from floor to waist 50-55 pounds occasionally and 25 pounds frequently, and push and pull up to 65 pounds.  (Id.)  He was able to sit for 30 minutes, with reported difficulty, and walk for 25 minutes.  (Id.)  Despite Plaintiff's assertions to the contrary, these capabilities clearly establish Plaintiff's ability to perform sedentary to medium work on a full-time basis.

It is well-settled law that individuals capable of performing such work are not disabled under an "any occupation" ERISA LTD policy.  See  Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1452 (11th Cir. 1997) (affirming summary judgment for administrator under "any occupation" standard where physician deemed claimant "capable of sedentary work"); Richey v. Hartford Life & Accident Ins. Co., 608 F. Supp. 2d 1306, 1311-12) (finding insurer's "any occupation" decision was not wrong where physical capabilities evaluations, employability analysis, and independent peer review supported plaintiff's ability to do sedentary to light work).

Additionally, Aetna was not wrong in discounting the additional evidence submitted on appeal by Plaintiff.  Specifically, Plaintiff submitted two Workman's Compensation Status Forms dated October 11, 2012 and November 28, 2012, that were singed by Dr. Clark and had a check mark next to "patient not able to work." (Admin. Rec. at 000543, 000547.)  These conclusory forms do not give near enough support to Plaintiff's claim that he is incapable of working in "any occupation" as they failed to provide any basis for the decision.  This is particularly true where the overwhelming medical evidence, including that from Dr. Clark, is inconsistent with such a conclusion.[6]  Unsupported declarations that a claimant is unable to work are

---

[6] Indeed, Dr. Clark's most recent medical records from October 2012 reflect that Plaintiff had "no evidence of root encroachment" in his spine, the fusion at L5-S1 was progressing satisfactorily, the pedicle screws were in excellent condition, and Plaintiff would be seen in the

not enough to support a claim of disability.  See Gipson v. Admin. Comm. of Delta Air Lines, 350 F. App'x 389, 395 (11th Cir. 2009).

Finally, Plaintiff's medical records were thoroughly reviewed by an independent, board certified physician in physical medicine and rehabilitation with a sub-specialty certificate in pain medicine, Dr. Ephraim K. Brenman, D.O., who opined that the record did not support a functional impairment precluding Plaintiff from performing "any occupation" or a heavy physical demand level occupation. (Admin. Rec. at 000486-89.)  Dr. Brenman expressly disagreed with Dr. Clark's opinion that Plaintiff was not able to work, and stated that it was not supported by the medical evidence.  (Id.)  An ERISA administrator is entitled to rely on the opinion of a qualified consultant who neither treats nor examines the claimant, but instead reviews the claimant's medical records.  See Hufford v. Harris Corp., 322 F.Supp.2d, 1345, 1359 (M.D.Fla. 2004); Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1148 (7th Cir. 1998).

In sum, Aetna's benefits decision, based on the FCE, the independent review of Dr. Brenman, Dr. Clark's medical records and release of Plaintiff to return to work, the CT myelogram and MRI scans, and transferable skills analysis, was correct.  As such, summary judgment is due to be granted in favor of Aetna.

---

future only as needed.  (Admin. Rec. at 000544-46.)

## B.  There are Reasonable Grounds for Aetna's Decision

Under the multi-step ERISA framework, the court's inquiry ends after the court determines that Aetna's decision was correct.  <u>Blankenship</u>, 644 F.3d at 1355. However, alternatively and additionally, the court concludes, consistent with the discussion above, that even if Aetna's decision was wrong (and to be clear, the court finds that it was not), there were "reasonable" grounds in the record which support Aetna's decision.  Because reasonable grounds exist to support the denial decision, it is unnecessary for the court to determine if Aetna operated under a conflict of interest.  Therefore, this court's consideration of Plaintiff's ERISA claim is at its end.

## IV.  Conclusion

Aetna's decision is due to be affirmed.  A separate order will be entered dismissing this case with prejudice.

**DONE** this the ___16th___ day of April, 2015.


_____

SENIOR UNITED STATES DISTRICT JUDGE